.         UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.3:03CR136(AWT) |
| | : | |
| v. | : | |
| | : | |
| RAFAEL CANALES | : | DECEMBER 27, 2004 |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MEMORANDUM IN AID OF SENTENCING**

**INTRODUCTION**

The defendant, Rafael Canales, has filed a sentencing memorandum challenging the use of criminal history enhancements in light of Blakely v. Washington, - - - U.S. - - -, 124 S. Ct. 2531 (2004) (2004), and seeking a downward departure from the projected Guidelines range based on alleged overstatement of his criminal history and emotional and mental problems. The Government submits this memorandum in response to defendant's memorandum and to set forth its position regarding the appropriate sentence in this case.

First, the Government opposes a downward departure from the sentencing guidelines based on the defendant's argument that his criminal history is overstated and/or that he suffers from emotional and mental problems, as the facts supporting the request do not take this case out of the heartland of Guidelines cases.

Second, the Supreme Court's decision in Blakely lends no support to defendant's position that criminal history points are an improper method for increasing a sentence. In any event, based on principles of *stare decisis,* Blakely's disavowal of any intent to rule on the validity of the United States Sentencing Guidelines, and the Second Circuit's decision in United States v. Mincey, 380

F.3d 102, 106 (2d Cir. 2004) (*per curiam*), the Court should conclude that <u>Blakely</u> does not affect this Court's authority to determine sentence-enhancing facts by a preponderance of the evidence consistent with the Guidelines.

Third, if the Court concludes that <u>Blakely</u> applies to the Guidelines and that <u>Blakely</u> would require on the facts of this case a further jury determination of defendant's prior criminal history, the Court should not apply the Guidelines at all to this case. Instead, the Court should revert to pre-Guidelines indeterminate sentencing, with due consideration of what sentence would otherwise be prescribed under the Guidelines.

Finally, in addition to stating the sentence it imposes and how its sentence is affected (if at all) by <u>Blakely</u>, the Court should state alternative sentences that it would impose in the event <u>Blakely</u> is interpreted differently by the Supreme Court. This precautionary step may vastly simplify any appellate review and eliminate the need for further remand proceedings. The record should make clear what sentence the Court would impose (1) under the Guidelines without regard to <u>Blakely</u>; (2) under the Guidelines if <u>Blakely</u> applies to the criminal history point calculations as raised by the defendant; and (3) under pre-Guidelines indeterminate sentencing principles, with due regard to what the pre-<u>Blakely</u> Guidelines sentence would otherwise be.

## **BACKGROUND**

On January 5, 2004, defendant Rafael Canales pleaded guilty to Count Two of the Superseding Indictment, charging him with passing, and attempting to pass, counterfeit obligations of the United States in violation of Title 18, United States Code, Section 472, pursuant to a written plea agreement with the Government. The Government and defendant stipulated in the plea agreement that: 1) pursuant to U.S.S.G. § 2B5.1(a) the base offense level for defendant is nine (9),

2) defendant's base offense level should be increased by one level because the value of the counterfeit currency exceeded $2000; and 3) defendant's offense level should be reduced by two levels to reflect defendant's prompt acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. The parties further agreed that the defendant's extensive criminal history places him in criminal history category VI.[1]

On March 19, 2004, the United States Probation Office completed a Presentence Report ("PSR") using the United States Sentencing Guidelines Manual effective November 5, 2003 (hereinafter "the Guidelines") for the sentencing calculations. The PSR arrived at a total adjusted offense level of eight (8), PSR at ¶ 20, and calculated a total of twenty-three (23) criminal history points for a criminal history category of VI,[2] see PSR at ¶¶ 21-33, concurring with the parties' original estimate in the plea agreement. The applicable sentence range under the Guidelines for an offense level of eight (8) and a criminal history category of VI is 18 to 24 months.

As stated above, defendant now objects to the use of criminal history points to "enhance" his sentence and further moves for a downward departure on the grounds that his criminal history category overstates his criminal history and due to mental and emotional problems. For the

---

[1] The plea agreement additionally noted the parties' disagreement as to whether the defendant's offense level should by increased by two additional levels to reflect his role as an organizer and/or leader of the offense. See U.S.S.G. § 3B1.1(c). The Government is not pursuing this enhancement at sentencing but will seek a sentence at the high end of the applicable guideline range in light of the defendant's management role and greater culpability in this offense.

[2] Defendant has twenty (20) criminal history points resulting from past convictions. The remaining three (3) criminal history points are the result of an additional one (1) point for committing the instant offense less than two (2) years after release from imprisonment, see U.S.S.G. § 4A1.1(e), and two (2) points because the instant offense was committed while the defendant was on probation. See U.S.S.G. § 4A1.1(d). PSR at ¶ 33.

following reasons, the Court should reject these arguments and sentence the defendant within the applicable Guidelines range.

## ARGUMENT

I.  *Blakely v. Washington* **Does Not Limit the Court's Authority to Apply Upward Adjustments and Sentencing Enhancements Under the Guidelines**

The Supreme Court's decision in Blakely has raised issues concerning what factors a court may consider at sentencing. The case involved the Washington state sentencing guidelines. The Supreme Court applied the rule of Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) to invalidate a sentencing enhancement, imposed pursuant to state law, that increased the sentence beyond the range authorized by Washington state's statutory sentencing guidelines regime. The Court explained that, because the facts supporting the enhancement were "neither admitted by [the defendant] nor found by a jury," the sentence violated the Sixth Amendment right to trial by jury. 124 S. Ct. at 2537. Blakely did not invalidate the United States Sentencing Guidelines, nor did it hold that its rule applies to the Guidelines. See 124 S. Ct. at 2538 n.9 ("The Federal Guidelines are not before us, and we express no opinion on them"). Indeed, even in Apprendi, the Supreme Court expressed no view on the Guidelines beyond "what this Court has already held." Id. (citing Edwards v. United States, 523 U.S. 511, 515 (1998)).

The Supreme Court has consistently upheld the Guidelines against constitutional attack and underscored their unique status within our constitutional scheme. See, e.g., Mistretta v. United States, 488 U.S. 361, 412 (1989) (upholding constitutionality of federal Guidelines and the Sentencing Commission; "Congress neither delegated excessive legislative power [to the Commission] nor upset the constitutionally mandated balance of powers among the coordinate Branches" by placing the Commission within the judicial branch). Indeed, the Supreme Court has

4

found that so long as a sentence does not exceed the statutory maximums established by Congress for the offense of conviction, a Guidelines sentence can (in fact, sometimes must) be based on judge-found conduct not proved to a jury, see Edwards v. United States, 523 U.S. 511, 514-15 (1998); conduct not charged in the indictment, see Witte v. United States, 515 U.S. 389, 399-401 (1995); and conduct of which a defendant is acquitted but is established at sentencing by a preponderance of the evidence. See United States v. Watts, 519 U.S. 148, 156-57 (1997) (*per curiam*). Moreover, the Court has explicitly held that lower courts are bound not only by the Guidelines, but by their policy statements and commentary as well. See Stinson v. United States, 508 U.S. 36, 42 (1993).

In upholding the validity of the Guidelines, the Supreme Court viewed Guidelines enhancements not as "statutory maximums" (requiring proof to a jury beyond a reasonable doubt), but as rules channeling the discretion of judges within congressionally set maximums in the United States Code. Indeed, the Court explicitly said as much in Edwards, which it notably cited with approval in Apprendi:

> Of course, petitioners' statutory and constitutional claims [that the court must base its Guidelines sentence exclusively on the cocaine-only facts found by the jury] would make a difference if it were possible to argue, say, that the sentences imposed exceeded the maximum that the statutes permit for a cocaine-only conspiracy. That is because a maximum sentence set by statute trumps a higher sentence set forth in the Guidelines.

Edwards, 523 U.S. at 515; Apprendi, 530 U.S. at 497 n.21; see also Witte, 515 U.S. at 399-400 (although Guidelines enhancement for uncharged conduct resulted in higher Guidelines range than otherwise would have applied, range "still falls within the scope of the legislatively authorized penalty" and is thus constitutionally permissible); Mistretta, 488 U.S. at 396 (Guidelines "do not . . . establish[] minimum and maximum penalties" for crimes).

Nonetheless, since the Blakely decision, there has been a conflict in the Circuits on whether

the Federal sentencing guidelines remain valid. See United States v. Booker, 375 F.3d 508 (7th Cir.)(reversing sentence and holding that under Blakely, defendant is entitled to jury fact-finding regarding drug quantity and obstruction of justice beyond a reasonable doubt), *cert. granted,* 125 S. Ct. 11 (2004); United States v. Fanfan, No. 03-47, 2004 WL 1723114 (D. Me.) (ruling based on Blakely that defendant's Sixth Amendment rights would be violated if sentence was based on findings of fact not made by jury, but that jury's failure to determine which drugs were attributable to the defendant was harmless error and sentencing defendant in accordance with the Federal sentencing guidelines), *cert. granted*, 125 S. Ct. 12 (2004). Importantly, the Second Circuit has directed that Blakely does not apply to the Federal Sentencing Guidelines until the Supreme Court rules otherwise. See United States v. Mincey, 380 F.3d 102, 106 (2d Cir. 2004) (*per curiam)*. See also State Oil Co. v. Khan, 522 U.S. 3, 20 (1997) ("it is [the Supreme Court's] prerogative alone to overrule one of its precedents").

In Mincey, the Second Circuit expressly rejected the argument "that, in this Circuit, the Sixth Amendment now requires every enhancement factor that increases a Guidelines range to be pleaded and proved to a jury beyond a reasonable doubt." Mincey, 380 F.3d at 105-106. Importantly, the Second Circuit held:

> [u]nless and until the Supreme Court rules otherwise, the law in this Circuit remains as stated in [United States v. Garcia, 240 F.3d 180, 184 (2d Cir. 2001) (holding that a Guidelines factor that is "unrelated to a sentence above a statutory maximum . . . may be determined by a sentencing judge and need not be submitted to a jury.") and United States v. Thomas, 274 F.3d 655, 664 (2d Cir.) (in banc) (same), cert. denied, 531 U.S. 1069 (2001)] and our other related case law. We conclude that the district court did not err in sentencing defendants in accordance with the Guidelines as previously interpreted by this Court.
>
> \* \* \*
>
> In so holding, we expect that, until the Supreme Court rules otherwise, the courts of this Circuit will continue fully to apply the Guidelines.

6

Id. At 106. See also United States v. Thorn, 317 F.3d 107, 124 (2d Cir.) (ordinary upward adjustments and departures under the Federal Sentencing Guidelines may be made by the sentencing court based on a preponderance of the evidence, provided they do not result in a sentence that exceeds that maximum statutory penalty), cert. denied, 538 U.S. 1064 (2003); United States v. Norris, 281 F.3d 357, 359 (2d Cir.), cert. denied, 536 U.S. 949 (2002)(same).

Based on the Second Circuit's recent directive in Mincey, and well-established Second Circuit and Supreme Court precedent, this Court should sentence defendant Canales in accordance with the Guidelines.

### A.     Criminal History Points Are Not Affected by *Blakely*

The defendant argues that Blakely requires jury fact-finding before his Guidelines range can be increased based on his previous criminal history. Notably, however, the defendant has not contested the fact of his prior convictions in his memorandum. In fact, the defendant admits to his numerous prior convictions. See Def. Memo. at 6 and Plea Agreement. In any event, the Supreme Court's decision in Blakely lends no support to defendant's position that criminal history points are an improper method for increasing a sentence. First, in invalidating the sentence at issue, the Blakely majority applied the rule in Apprendi requiring that a jury find beyond a reasonable doubt all *elements* of an offense that increase the penalty. Blakely, 124 S. Ct. at 2537. In Apprendi, the Court held that *"[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490 (emphasis added). Relatedly, in Almendarez-Torres v. United States, 523 U.S. 224 (1998), the Court held that the government need not allege the existence of a prior aggravated felony conviction in the indictment or prove its existence to a jury, even when that

conviction is used to increase the authorized penalty for the offense. The Court did not overrule this holding in Apprendi. Moreover, the Second Circuit has held that Apprendi "leav[es] to the judge, consistent with due process, the task of finding not only the mere fact of previous convictions but other related issues as well." United States v. Santiago, 268 F.3d 151, 156 (2d Cir. 2001). Thus, Blakely does not affect this Court's authority to find the facts of defendant's prior convictions, by a preponderance of the evidence, for purposes of determining his criminal history category under the sentencing guidelines. See Guidelines Manual Ch. 4, Pt. A, § 4A1.1 et. seq. (2003). See also 18 U.S.C. 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

The defendant argues that "criminal history points for such things as committing the offense while on probation or within two years of release from incarceration clearly must be unconstitutional under Blakely," see Def. Memo. at 2, but provides no further support. This argument assumes that the Guidelines are unconstitutional. However, as explained above, Blakely did not invalidate the Federal Sentencing Guidelines and in fact, "express[ed] no opinion on them." Blakely, 124 S. Ct. at 2538 n.9 ("[t]he Federal Guidelines are not before us, and we express no opinion on them"). Moreover, the Second Circuit has instructed courts in this Circuit to apply the guidelines unless the Supreme Court directs otherwise. See Mincey, 380 F.3d at 106. Accordingly, this Court should find that Blakely does not affect the Court's fact-finding with respect to enhancements based on the defendant's prior criminal history.

## II. The Court Should Reject Defendant's Downward Departure Request

In his sentencing memorandum, the defendant claims that a downward departure from the applicable Guidelines is warranted because of (1) overstatement of his criminal history and (2) emotional and mental problems. A sentencing court may not depart from the applicable Guidelines range unless "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b)(1); U.S.S.G. § 5K2.0 (Policy Statement). To justify a departure, the court must find that the Sentencing Commission has not given a particular factor adequate consideration in light of unusual circumstances, or an offender's characteristic or other circumstance is present to an unusual degree and distinguishes the case significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing. See U.S.S.G. § 5K2.0 (Policy Statement and Commentary). The defendant bears the burden of establishing that he should receive a downward departure. See United States v. Silleg, 311 F.3d 557, 564 (2d Cir.2002).[3]

In this case, the defendant's proffered grounds for departure, whether viewed separately or in combination, do not justify a downward departure from the applicable Guidelines range.

### A. The Defendant's Criminal History is Not Overstated

The Guidelines expressly permit departures based on inadequacy of criminal history category. See U.S.S.G. § 4A1.3. To justify a downward departure on this basis, "reliable information" must

---

[3] Previously, a district court's decision whether to depart from the Guidelines range was subject to review for "abuse of discretion." See Koon v. United States, 518 U.S. 81, 98 (1996). The PROTECT Act, effective April 30, 2003, now requires de novo review of a sentencing court's determination "whether a departure is 'justified by the facts of the case.'" United States v. Simmons, 343 F.3d 72, 78 (2d Cir. 2003) (quoting PROTECT Act § 401(d)(2)).

demonstrate that "the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(b)(1). [4] In this case, the defendant cannot meet this standard.

First, the defendant's criminal history category accurately reflects the defendant's prior criminal activity and the likelihood that he will continue to commit other crimes. Defendant argues that a criminal history category of VI "significantly over-represents the seriousness" of the defendant's criminal history. However, a brief glance at the defendant's criminal history reveals a pattern of consistent criminal activity. Defendant has been unable, as an adult, to maintain a crime free life for longer than three (3) years. Defendant's criminal history, contained in the PSR, shows that from the age of 21 to the present, defendant has committed and been convicted of a crime approximately every two years. While some of these offenses may pale in comparison to the instant counterfeiting crime for which he stands to be sentenced, the defendant's several drug offenses and at least one offense involving violence in the context of a domestic dispute are serious and should not be discounted.

Defendant urges the Court to follow the holding of United States v. Mishoe, 241 F.3d 214 (2nd Cir.2001). However, the instant case is distinguishable from Mishoe. In Mishoe, the defendant argued that his criminal history category and designation as a career criminal offender significantly over-represented his criminal history. The crux of the Mishoe analysis is that the defendant faced significant sentencing enhancements amounting to a possible 11 year sentence because of a very

---

[4] Should the Court grant a departure on this basis, the Court must specify in writing "the specific reasons why the applicable criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." Id. at § 4A1.3(c)(2).

10

limited criminal history. However, in Mishoe, the defendant's criminal history contained only three (3) felonies and one (1) misdemeanor. Accordingly, the Mishoe court stated in that type of case, a long sentence may not achieve the result of deterrence envisioned by the Sentencing Commission. Mishoe, 241 F. 3d at 220.

The instant case is not similar to the factual scenario encountered in Mishoe. In fact, Mishoe supports the Government's position. The Court therein explained, "[c]onversely [to that case], if a defendant served no time or *only a few months for the prior offenses*, a sentence of even three to five years for the current offense might be expected to have the requisite deterrent effect." 241 F.3d at 220 (emphasis added) The alternative scenario juxtaposed in Mishoe is presented in the instant case. The defendant has ten (10) total convictions and has served "not . . . more than two years of incarceration for . . .his convictions. . . ." (Def. Memo. at 6.). Moreover, in this case, the defendant's projected Guidelines range of 18-24 months is not at all similar to the severe enhancement faced by the defendant in Mishoe. Instead, this range falls within the range that the Mishoe court felt would offer the "requisite deterrent effect" given the defendant's past convictions and resulting sentences. Id. Therefore, the defendant's criminal history category does not overstate the seriousness of his offenses but is in fact an accurate representation of the sentencing range that the defendant should fall within. Accordingly, the Court should refuse to depart downward on this ground.

      **B.**     **Defendant's Emotional and Mental Problems Do Not Warrant a Departure.**

The Court should likewise reject the defendant's contention that his emotional and mental problems warrant a downward departure. Although the guidelines recognize that there may be an "extraordinary case that, because of a combination of . . . characteristics or circumstances, differs significantly from the 'heartland' cases covered by this guidelines. . .," this case is not one of those.

11

Indeed, the Commission noted that "such cases will be extremely rare." U.S.S.G. § 5K2.0, *Introductory Commentary* (2003). Furthermore, a downward departure for a defendant's mental or emotional condition is a discouraged basis for departure. See United States v. Kim, 313 F. Supp. 2d 295, 300 (S.D.N.Y. 2004)(citing U.S.S.G. §5H1.3). Accordingly, the court may depart "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case." Koon, 518 U.S. at 96; See also U.S.S.G. § 5K2.0

Defendant argues that he suffers from severe mental distress and depression.[5] See Def. Memo. at 7-8. Defendant asserts that the death of his infant child, the death of his girlfriend, his continued drug abuse and "the trauma he received as a child" creates the factors that make his mental and emotional condition "exceptional" or "in some other way makes [his] case different from the ordinary case." Koon 518 U.S. at 96. However, defendant's assertions fail to rise to the level of exceptional degree contemplated as supporting a departure. Compare United States v. Rivera, 192 F.3d 81, 85 (2d Cir.1999) (holding that abuse suffered as a child, ranging from beatings to lack of supervision, was not exceptional to warrant a downward departure) with United States v. Barton, 76 F.3d 499, 501 (2d Cir 1996) (letter by treating psychiatrist indicating that defendant suffered from

---

[5] It is unclear from the Defendant's Memorandum if the defendant is asking the Court for a downward departure based on diminished mental capacity. However, the Government submits that if defendant is seeking a departure on this ground, the departure should be denied. The defendant has failed to show a "significantly reduced mental capacity" as defined in the Guidelines. See U.S.S.G. § 5K2.13. First, the defendant has not demonstrated that his alleged depression impaired his ability to "(A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13, *Application Note 1*. Moreover, the defendant has failed to show a *causal relationship* between his diagnosed illness and his criminal conduct. See U.S.S.G. § 5K2.13 (defendant must show he "committed the offense while suffering from a significantly reduced mental capacity."). United States v. Prescott, 920 F.2d 139, 146 (2d Cir. 1990) (once a "reduced mental capacity" has been established, defendant must next prove a causal link, or nexus, between reduced capacity and commission of the charged offense.).

12

depression and anxiety did not establish that defendant suffered from extraordinary mental condition to warrant downward departure) with Psihountas v. United States, 2000 WL 739548 (S.D.N.Y. 2000) (finding that diagnosed depression did not entitle defendant to downward departure for diminished capacity). Defendant's mental and emotional grounds for departing are no worse or exceptional than those in the above cases in which the courts did not depart downward. Accordingly, the Court should deny defendant's request for a downward departure.

### III. If the Court Holds that *Blakely* Precludes Application of the Guidelines Based on Judge-Made Factual Findings Necessary to Calculate Defendant's Criminal History Category, Then the Court Should Impose a Sentence Within the Statutory Maximum With Due Regard to the Sentences Prescribed by the Guidelines for Similar Offenses.

If this Court disagrees with the Government's argument and holds that Blakely applies to the Guidelines, then the Court must decide how sentencing is to be conducted. The Guidelines contain many "enhancement" provisions -- i.e., provisions that provide for a higher offense level or that authorize an upward departure from a defendant's Guidelines sentencing range based on particular factual findings. If Blakely applies to the Guidelines, and absent a waiver by the defendant, those enhancement provisions generally could be applied in a given case only if, contrary to the current system of judge-made findings, the necessary facts have been charged and found by a jury beyond a reasonable doubt. By contrast, provisions that *reduce* a defendant's sentencing range or authorize a downward departure, however, could still be applied, as intended, by a court at sentencing based on findings by a preponderance of the evidence. See Harris v. United States, 536 U.S. 545 (2002); See also Blakely, 124 S. Ct. at 2538 (rule does not apply to cases involving "sentencing scheme[s] that imposed a statutory minimum if a judge found a particular fact") (citing McMillan v. Pennsylvania, 477 U.S. 79 (1986)).

A requirement that enhancing -- but not reducing -- facts have to be submitted to the jury and

13

proven beyond a reasonable doubt would distort the operation of the sentencing system in a wholesale manner that was neither contemplated nor intended by Congress or the Sentencing Commission. Accordingly, rather than attempting to apply the Guidelines with a "Blakely overlay" of jury factfinding, a court should simply conclude that the parts of the Guidelines system that are unconstitutional (the finding of sentence-enhancing facts by a sentencing judge using a preponderance-of-evidence standard of proof) are inseverable from the Guidelines as a whole. The result is that, in any case in which Blakely precludes judicial factfinding under the Guidelines, statutory severability analysis instructs that the Guidelines as a whole would be invalidated as a binding set of rules governing sentences that must be imposed.

## IV. The Court Should State Alternative Sentences.

In light of the considerable uncertainty as to how the Supreme Court will effectuate the Blakely decision, the Government respectfully recommends that the Court state at sentencing the sentence it would have imposed if it applied different possible methodologies. Specifically, the Court should make clear what sentence it would impose (1) under the Guidelines without regard to Blakely; (2) under the Guidelines if Blakely applies to sentence-enhancing facts; and (3) under pre-Guidelines indeterminate sentencing principles, with due regard to what the pre-Blakely Guidelines sentence would otherwise be. By making clear what sentence would be imposed under alternative methodologies, the Court may significantly clarify the record in the event of any appellate review.

## CONCLUSION

In the Government's view, the Probation Office has calculated the defendant's guideline range of 18 to 24 months correctly. The Government additionally respectfully requests that the Court deny defendant's request for downward departure, for the reasons stated above, and sentence

the defendant to a term of imprisonment at the high end of the Guidelines range based on his supervisory role in the offense.

In addition, the Government submits this case may be disposed of without implicating <u>Blakely</u>. The defendant's argument that his criminal history calculation requires fact-finding by a jury beyond a reasonable doubt should be rejected because both <u>Blakely</u> and <u>Apprendi</u> recognize that the adjudication of prior-conviction enhancements are not subject to jury finding requirements. The defendant has admitted the elements of the crime and has stipulated the value of the counterfeit currency he passed exceeded $2000, thereby requiring a one level enhancement under U.S.S.G. § 2B5.1. Therefore, if the sentence is based on that information, there are no enhancements which would trigger a <u>Blakely</u> issue.

Should the Court nonetheless find that <u>Blakely</u> precludes application of the Guidelines due to enhancements based on the defendant's criminal history, then the Court should decline altogether to apply the Sentencing Guidelines and impose a sentence within the statutory maximum with due regard to the sentences prescribed by the Guidelines for similar offenses and defendants.

Finally, due to the uncertainty as to how the Supreme Court may apply <u>Blakely</u>, the Government respectfully recommends that the Court state at sentencing the sentence it would impose (1) under the Guidelines without regard to <u>Blakely</u>; (2) under the Guidelines if <u>Blakely</u> applies to sentence-enhancing facts; and (3) under pre-Guidelines indeterminate sentencing principles, with due regard to what the pre-<u>Blakely</u> Guidelines sentence would otherwise be.

        Respectfully Submitted,

        KEVIN J. O'CONNOR
        UNITED STATES ATTORNEY


        LISA E. PERKINS
        ASSISTANT UNITED STATES ATTORNEY
        450 MAIN STREET, ROOM 328
        HARTFORD, CT  06103
        (860) 947-1101
        FEDERAL BAR NO. ct23164

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the above and foregoing has been mailed, postage prepaid, on this 27th day of December, 2004 to:

Francis L. O'Reilly
87 Ruane Street
Fairfield, CT 06430


                                                        Lisa E. Perkins
                                                        Assistant United States Attorney